# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| LISA CORNELL, | |
| Plaintiff, | No. C13-4022-DEO |
| vs. | **ORDER** |
| JIM HAWK TRUCK TRAILER, INC., et al., | |
| Defendants. | |

## I.  INTRODUCTION

Plaintiff has filed a motion (Doc. No. 32) to quash subpoenas duces tecum and for protective order. The motion raises issues concerning document-production subpoenas certain defendants have served on plaintiff's current and former employers. The defendants that issued the subpoenas have filed a resistance (Doc. No. 38) and plaintiff has filed a reply (Doc. No. 41). I conducted a telephonic hearing on February 7, 2014. The motion is fully submitted.

## II.  RELEVANT BACKGROUND

Plaintiff Lisa Cornell filed this case on February 22, 2013. Her complaint, as later amended, asserts claims against Jim Hawk Truck Trailer, Inc., Sioux City Jim Hawk Truck Trailer, Inc., and Shawn Corbett.[1] *See* Doc. No. 15. Cornell alleges that she was hired on February 7, 2011, to be the office manager of the Hawk Defendants' Sioux City branch. She further alleges that Corbett was the general manager and her direct

---

[1] I will refer to Jim Hawk Truck Trailer, Inc., and Sioux City Jim Hawk Truck Trailer, Inc., collectively herein as the Hawk Defendants.

supervisor. She contends that Corbett started sexually harassing her about three months after her employment began. She contends that the harassment took place both in the office and outside the office, via text messaging. Her amended complaint includes detailed allegations concerning Corbett's alleged comments and actions. Doc. No. 15 at ¶¶ 19-26.

Cornell alleges that when she did not respond favorably to Corbett's sexual advances, he began treating her differently. She further alleges that she reported Corbett's conduct to members of the Hawk Defendants' management team but her complaints were not acted upon. She contends she was then fired a short time after filing complaints with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission. *Id*. at ¶¶ 27-47. She asserts claims of sexual harassment, discrimination and retaliation under the Iowa Civil Rights Act and Title VII of the Civil Rights Act of 1964.

All of the defendants have filed answers denying various allegations and denying liability to Cornell. Among other things, the Hawk Defendants contend that Cornell's employment was terminated for legitimate, performance-based reasons. On December 12, 2013, counsel for the Hawk Defendants sent a Notice of Intent to Issue Subpoenas Duces Tecum (Notice) to Cornell's counsel, attaching subpoenas to Cornell's current and former employers, dating back to 1992. The Notice indicated that the Hawk Defendants would be demanding production of five different types of documents, culminating in "All other documents in your possession, custody or control pertaining to the employment of Lisa Cornell . . . ."

Cornell's counsel spoke with counsel for the Hawk Defendants about the Notice on December 16 and 17, 2013, and requested that the Hawk Defendants narrow or withdraw the proposed subpoenas. Cornell's counsel asked that the Hawk Defendants delay service of the subpoenas until the parties could obtain guidance from the court through a Motion for Protective Order. Apparently, no agreement was reached on this issue, as the Hawk Defendants proceeded to serve the subpoenas on five different entities

on or about December 31, 2013. As served, the subpoenas demanded that each recipient produce the following documents:

    A.    Personnel Records. Any and all personnel records, including, but not limited to, starting and ending dates of employment, applications, resumes, job descriptions, performance evaluations, disciplinary reports;

    B.    Payroll & Attendance Records. Any and all payroll and attendance records, including, but not limited to, W-2 forms, records of earnings and compensation, time and attendance logs, and any other records illustrating dates and hours worked, vacation time, and sick time;

    C.    Benefits Records. Any and all benefits records, including, but not limited to, all records relating to plaintiff's medical insurance, short-term disability, long-term disability, leaves of absence, retirement contributions and life insurance;

    D.    Medical Records. Any and all medical records, including, but not limited to, reports of physical or mental examinations conducted as a condition of employment, work excuses, physician's notes, and disability and workers' compensation records; and

    E.    Any other documents in your possession, custody or control pertaining to the employment of Lisa Cornell, DOB: (redacted), SSN: (redacted).

On January 6, 2014, Cornell's counsel learned that the subpoenas had been served. Cornell's motion was filed the same day. As of the date of the telephonic hearing, the parties had resolved nearly all issues concerning the subpoenas. Among other things, the Hawk Defendants had made the wise decision[2] to narrow the scope of the subpoenas dramatically. Indeed, and except for the language **emphasized** below, the parties have agreed that the subpoenas can properly request the following documents:

---

[2] This was a wise decision because the original scope of each subpoena was ridiculous in light of the issues present in this case.

> A. Personnel Records. Any and all personnel records, including, but not limited to, starting and ending dates of employment, applications, resumes, job descriptions, **performance evaluations, disciplinary reports**;
>
> B. Payroll & Attendance Records. Any and all W-2 forms and records of earnings and compensation; and
>
> C. Benefits Records. Any and all benefits records, including, but not limited to, all records relating to plaintiff's medical insurance, short-term disability, long-term disability, leaves of absence, retirement contributions and life insurance.

*See* Doc. No. 41 at 1. Thus, the Hawk Defendants no longer seek production of time and attendance logs, records illustrating dates and hours worked, vacation time, sick time or medical records. Moreover, the Hawk Defendants have agreed to limit the subpoenas to documents and information generated or occurring since January 1, 2007. The only remaining disputed issue concerning the scope of the subpoenas is whether the Hawk Defendants have the right to obtain performance evaluations and disciplinary reports from Cornell's former and subsequent employers. In addition, Cornell raises an issue concerning the appropriate method for obtaining information from her current employer.

### III. ANALYSIS

#### A. *Are Performance Evaluations And Disciplinary Reports From Other Employers Discoverable In This Case?*

Cornell and the Hawk Defendants have cited numerous cases supporting their respective positions. I have reviewed those cases, and others. As I mentioned during the hearing, however, I find other cases to be of limited value with regard to an issue of this nature because each case turns on very specific facts. The general legal principles that apply to the scope of discovery in the course of federal civil litigation are well-known. The Federal Rules of Civil Procedure authorize broad discovery. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that

is relevant to any party's claim or defense."). "Discovery Rules are to be broadly and liberally construed in order to fulfill discovery's purposes of providing both parties with 'information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement.'" *Marook v. State Farm Mut. Auto. Ins. Co.*, 259 F.R.D. 388, 394 (N.D. Iowa 2009) (quoting *Rolscreen Co. v. Pella Prods.*, 145 F.R.D. 92, 94 (S.D. Iowa 1992)). Discovery requests are typically deemed relevant if there is any possibility that the information sought is relevant to any issue in the case. *Penford Corp. v. National Union Fire Ins. Co.*, 265 F.R.D. 430, 434-35 (N.D. Iowa 2009) (citing *Davis v. Union Pacific R.R. Co.*, No. 4:07CV00521 BSM, 2008 WL 3992761 (E.D. Ark. Aug. 26, 2008)). The party resisting production of requested information bears the burden of establishing the lack of relevancy, unless that lack of relevancy is obvious. *Marook*, 259 F.R.D. at 394-95.

Here, the Hawk Defendants contend that performance evaluations and disciplinary reports from other employers are relevant because it is their position that Cornell was discharged due to performance issues. During the hearing, counsel for the Hawk Defendants stated that Cornell's job duties were expanded to include some accounting-related tasks and that she proved to be incapable of handling those tasks. They believe it would be relevant to discover whether other employers have reported Cornell to have job performance issues.

Cornell denies that performance evaluations and disciplinary reports from other employers have any potential relevance. She also notes that many courts have recognized privacy interests regarding personnel records and suggests that those interests weigh against permitting discovery of those records absent a compelling need. Finally, she contends that the Hawk Defendants' arguments in favor of relevance are based on nothing but their sheer speculation as to the contents of the requested documents.

I will first address performance evaluations with regard to both prior and subsequent employers, as I find that the issues are identical with regard to both types of

5

employers. As for disciplinary reports, I find that the analysis differs as between prior and subsequent employers. As such, I will address each type of employer separately.

*Performance Evaluations (Prior and Subsequent Employers)*. Based on the Hawk Defendants' explanation of alleged relevance, and in light of the broad scope of discovery permitted in federal civil litigation, I find that performance evaluations prepared by other employers since January 1, 2007, have enough potential relevance to be properly discoverable in this case. Because Cornell has agreed that the Hawk Defendants may obtain job descriptions, it is foreseeable that performance evaluations, when matched with those job descriptions, might demonstrate whether other employers reported Cornell to have performance concerns similar to those alleged by the Hawk Defendants. If so, that information could be arguably admissible at trial or, at least, could lead to the discovery of additional, relevant evidence.

Of course, because the contents of the performance evaluations are not currently known, it is also possible that they will contain no relevant information. However, the Hawk Defendants have articulated a sufficient, logical explanation of potential relevance to permit discovery of those evaluations from both prior and subsequent employers. I will deny Cornell's motion with regard to these documents.

*Disciplinary Records (Prior Employers)*. By contrast, the Hawk Defendants have not come close to explaining the potential relevance of disciplinary records, at least with regard to prior employers. If the Hawk Defendants claimed that they discharged Cornell because of insubordination, theft, poor attendance or some other, specific disciplinary-related reason, perhaps they would have a valid argument for discovering whether similar issues were reported by other employers. But that is not the case here. The Hawk Defendants have not articulated a reason as to why disciplinary reports from prior employers could have any possible relevance to any issue in this case. As such, I will grant Cornell's motion with regard to those documents.

*Disciplinary Records (Subsequent Employers)*. The Hawk Defendants have presented a somewhat-better theory concerning disciplinary records maintained by

6

subsequent employers. There is no dispute that Cornell's earnings after being discharged are relevant to the issue of damages in this case. Evidence suggesting that Cornell failed to act reasonably to mitigate her damages is also relevant. *See, e.g., Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 809 (8th Cir. 1982) (a wrongfully discharged claimant must use reasonable efforts to mitigate his or her damages). The Hawk Defendants argue that disciplinary records of subsequent employers could, potentially, show that Cornell's earnings have suffered because of disciplinary issues. For example, if she was denied a raise or promotion due to misconduct of some nature, evidence of that denial may be relevant to her damages.

Again, this is a lot of speculation, but without knowing the actual contents of the records I cannot find that they have no possible relevance. The Hawk Defendants have articulated a sufficient explanation of potential relevance to render disciplinary records of subsequent employers discoverable in this case. As such, I will deny Cornell's motion with regard to those records.

B.  *Is Cornell Entitled To Additional Protection With Regard To Her Current Employer?*

Cornell argues that she faces possible prejudice if her current employer, Unity Point Health, is required to respond to the Hawk Defendants' subpoena. She cites "the very real threat that her current employer would negatively perceive her involvement in litigation against one of her former employers." Doc. No. 41 at 4. It is somewhat ironic that after repeatedly complaining that the Hawk Defendants have engaged in improper speculation as to the contents of personnel files, Cornell engages in the same kind of speculation concerning her current employer. She does not claim, let alone point to evidence, that her current employer is inclined to treat employees differently if they are involved in claims against prior employers. Nonetheless, she argues that a "very real threat" of negative consequences exists if Unity Point Health is required to respond to a subpoena.

Of course, as I noted above, some amount of speculation is a natural part of the discovery process. Thus, I will not reject Cornell's argument simply because it is premised on future events that may or may not occur. It is at least foreseeable that some employers may react negatively when being compelled to participate in an employee's litigation against a prior employer. As such, I find that Cornell is entitled, if she so chooses, to utilize an alternative method for providing her Unity Point Health personnel records to the Hawk Defendants. Cornell has the right, under Iowa law, to obtain a copy of her personnel file from Unity Point. *See* Iowa Code § 91B.1. She may elect to do so in lieu of having Unity Point Health respond to the Hawk Defendants' subpoena. However, if Cornell chooses this option, she must provide the entire file to her counsel without removing or deleting any of its contents. Her counsel must then provide the entire file to counsel for the Hawk Defendants, again without removing or deleting any of its contents. Of course, this option may result in the discovery of information that is beyond the scope of the subpoena duces tecum. Cornell must weigh that disadvantage against her concerns that Unity Point Health may respond negatively if it is forced to respond to a subpoena in this case.

## IV. CONCLUSION

Plaintiff's motion (Doc. No. 32) to quash subpoenas duces tecum and for protective order is **granted in part** and **denied in part**, as follows:

1. The motion is **granted** in that, with regard to former employers (*i.e.,* Cornell's employers prior to the Hawk Defendants), the Hawk Defendants <u>are not</u> entitled to discover disciplinary reports.

2. The motion is **denied** in that, with regard to subsequent employers (*i.e.,* Cornell's employers after the Hawk Defendants), the Hawk Defendants <u>are</u> entitled to discover disciplinary reports.

3. The motion is **denied** in that, with regard to all of Cornell's other employers, the Hawk Defendants <u>are</u> entitled to obtain performance evaluations prepared by those employers at any time on or after January 1, 2007.

4. The motion is **granted** in that Cornell may elect the alternative method, described herein, for producing her Unity Point Health personnel file to the Hawk Defendants. If Cornell elects that alternative method, then the subpoena issued to Unity Point Health shall be **quashed** and no defendant shall serve an additional document production subpoena on Unity Point Health in this case without first obtaining leave of court. On or before **February 28, 2014**, Cornell's counsel shall notify counsel for the defendants as to whether or not Cornell will use the alternative method to produce her Unity Point Health personnel file. If Cornell elects not to use that alternative method, then the Hawk Defendants may proceed to enforce a subpoena duces tecum with regard to Unity Point Health in accordance with this order.

5. All records produced by any current or former employer of Cornell shall be treated as "confidential" pursuant to the stipulated protective order (Doc. No. 37) that has been entered in this case.

**IT IS SO ORDERED.**

**DATED** this 20th day of February, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE